IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADAM ROSS BREGMAN,<br><br>Defendant. | **8:23–CR–86**<br><br>**MEMORANDUM AND ORDER ON OBJECTIONS TO FINDINGS AND RECOMMENDATION ON MOTIONS TO SUPPRESS** |

The Government has charged defendant Adam Ross Bregman and twelve other defendants in the Third Superseding Indictment in this case. Filing 375. All the defendants have been charged with three crimes: conspiracy to distribute and possess with intent to distribute marijuana (Count I); money laundering (Count II); and conspiracy to commit money laundering (Count III). Filing 375. The defendant has filed two Motions to Suppress. The defendant's first motion, Filing 610, "moves this Court to suppress all statements he made on December 12, 2023, to HSI Special Agent Craig Allrich ('Allrich') during the execution of a search warrant at an apartment owned by Bregman, as well as any evidence (including physical and electronic) seized as the fruits of compelled, involuntary statements." Filing 610 at 1. The defendant's second motion, Filing 615, "moves this Court to suppress all evidence seized at 1645 N. Vine Street, Apartment 1007, Los Angeles, California 90028 and 1904 SE Colony Way, Jupiter, Florida (including a 2019 white Cadillac Escalade and 2014 white Jeep SUV), pursuant to search warrants issued by [a United States Magistrate Judge in the Central District of California] on December 11, 2023 and [a Magistrate Judge in the Southern District of Florida] on December 8, 2023, respectively." Filing 615 at 1. United States Magistrate Judge Ryan C. Carson held an evidentiary hearing on May 21,

2026. Filing 855 (Text Entry); Filing 894 (Transcript). Judge Carson submitted a Findings and Recommendation, recommending that the Motions to Suppress be denied in their entirety. Filing 913. The defendant filed an Objection and a request for supplemental evidentiary hearing. Filing 943. For the reasons stated below, Judge Carson's Findings and Recommendation is accepted, the defendant's objections are overruled, and the defendant's Motions to Suppress are denied.

## I. BACKGROUND

### A. Factual Background

The magistrate judge's Findings and Recommendation discuss the facts pertinent to the defendant's motions in greater detail. *See* Filing 913. The following background information provides context for the Court's ruling on the defendant's objections.[1] The following background will first provide a brief overview of the case and will then more specifically detail the factual circumstances relating to the warrant affidavits and the defendant's interview.

The original indictment in this case was filed on April 17, 2023. Filing 4. The indictment charged five defendants—not including the defendant—with three crimes: conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana and a mixture, compound, and preparation containing tetrahydrocannabinol (THC) in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1) (Count I); money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count II); and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 2 (Count III). Filing 4. The grand jury has since returned three superseding indictments. Filing 75

[1] The Court has reviewed the exhibits presented at the evidentiary hearing and the transcript of that hearing. Filing 612 (Defendant's Exhibit List for Filing 610); Filing 617 (Defendant's Exhibit List for Filing 615); Filing 643 (Defendant's Index of Evidentiary Materials in Support of Motions to Suppress Evidence and Request for a *Franks* Hearing); Filing 739 (Government's Index of Evidence); Filing 894 (Transcript). The magistrate judge accurately recounted the evidence received at the hearing in the Findings and Recommendation.

(Superseding Indictment); Filing 205 (Second Superseding Indictment); Filing 375 (Third Superseding Indictment). The three counts have remained the same throughout, but additional defendants have been charged with those crimes, and a Forfeiture Allegation has been added and changed in the superseding indictments. Defendant Adam Ross Bregman was first named in the Superseding Indictment filed on November 14, 2023. Filing 75.

A warrant was issued for the defendant's arrest on November 14, 2023. Filing 78. Not long thereafter, on December 8, 2023, Magistrate Judge Shaniek Mills Maynard of the Southern District of Florida authorized a search warrant for the defendant's residence in Jupiter, Florida. Filing 643-2. Three days later, on December 11, 2023, Magistrate Judge Jacqueline Chooljian of the Central District of California authorized a search warrant for the defendant's residence in Los Angeles, California, and any person located there. Filing 643-1. Both warrants were executed on December 12, 2023.

The defendant filed these motions to suppress, alleging various problems with the warrant affidavits submitted to the magistrate judges and the execution of the issued warrants. Filing 610; Filing 611; Filing 615; Filing 616; Filing 789; Filing 791. Specifically, one of the defendant's motions to suppress, Filing 615, asserts that "[t]he applications in support of warrants to search Bregman's California and Florida properties intentionally or recklessly omitted material facts regarding Bregman's work with state-licensed, state-regulated marijuana companies, operating lawfully in California." Filing 615 at 2. This first motion also asserts that "the search warrants are impermissibly overbroad, authorizing the search and seizure of every conceivable digital device capable of storing electronic data, without sufficient particularity, at the California and Florida premises." Filing 615 at 2. The other motion to suppress, Filing 610, asserts *inter alia* that HSI Special Agent "Allrich failed to read Bregman all of his *Miranda* rights" and that "Allrich's

conduct and communication with Bregman during the interrogation misled Bregman as to his rights and rendered Bregman's perceived cooperation and purported rights waiver unintelligent and involuntary." Filing 610 at 2.

*1. Warrants Issued in the Southern District of Florida and the Central District of California*

The Florida and California warrants were each supported by a probable cause affidavit prepared by Special Agent Allrich. The most significant distinction between the two warrants is that the Central District of California warrant included a search procedure for digital devices. Filing 643-1 at 8–12.

The Florida warrant application requested issuance of a search and seizure warrant as to 1904 SE Colony Way, Jupiter, Florida. Filing 643-2 at 6. In support of the warrant application, Allrich provided his background and expertise in investigating similar crimes. Filing 643-2 at 7 (¶ 3). Allrich also details the multi-year investigation relating to the offenses that the defendant has been charged with. In 2020, investigators observed codefendant Eric Thibodo and another person "deliver 111 pounds of marijuana, 32 pounds of THC shatter, and 5 pounds of THC oil to [Cooperating Defendant (CD-1)] in exchange for $200,403.00. The narcotics and proceeds were seized along with Thibodo's and CD-1's telephones." Filing 643-2 at 9 (¶ 10) (Thibodo's name reduced from all capitals). Allrich averred that "[t]hrough the course of the investigation, law enforcement identified 'FastBox' as a moving and storage company used for the sole purpose of moving bulk quantities of marijuana and marijuana products from Los Angeles throughout the United States," and that FastBox had office warehouses in a number of locations. Filing 643-2 at 9 (¶¶ 11–12).

Allrich averred that, "[o]n April 13, 2020, the HSI Oklahoma City Task Force stopped a semi-tractor . . . which had departed the New York FastBox location," and it was discovered that the trailer contained "approximately $3.9 million of suspected narcotics proceeds secreted in one of the FastBox crates. The suspected narcotics proceeds were packaged and marked with different symbols and/or acronyms, such as 'A,' 'NYO,' 'BL,' 'TR,' and others, which [purportedly] indicates the bulk currency belonged to different individuals." Filing 643-2 at 9 (¶ 13).

According to the affidavit, two other cooperating defendants (CD-2 and CD-3) that Allrich averred were employees of Fastbox "helped law enforcement identify" codefendants Leidermann and Reja "as the owners and operators of 'Fastbox.'" Filing 643-2 at 10 (¶ 15). CD-3, according to Allrich, had stated he has been working with Leiderman and Reja in various roles since 1998. Filing 643-2 at 10 (¶ 17). CD-3 indicated *inter alia* that "A"/"A-Real," or Adam Ross Bregman, was a client of Leidermann and Reja and "used the FastBox service to move marijuana and marijuana proceeds between California and other FastBox locations." Filing 643-2 at 10 (¶ 16).

The affidavit also states that Leidermann was charged with conspiracy to distribute controlled substances and money laundering and was arrested in April 2023. Filing 643-2 at 11 (¶ 21). Leidermann's seven phones were searched pursuant to a federal search warrant, and Allrich maintained in the affidavit that "[a] contact in Leidermann's phone was listed as 'A-Real,' with a number 310-488-5266. Through phone records and open-source records . . . [Allrich] identified this number as belonging to Bregman." Filing 643-2 at 11 (¶ 21) (Leidermann's and Bregman's names reduced from all capitals). The affidavit further alleges texts between Leidermann and Bregman and group chats that "discussed the difficulty of moving marijuana proceeds into the banking system." Filing 643-2 at 11 (¶ 22). The affidavit directed the magistrate judge's attention to an August 11, 2021, exchange in which Leidermann, Bregman, and five other phone numbers

in a group chat received a text saying *inter alia* "[a]s of now it's hard to space deposits out enough to cover the things that can not [sic] be paid in cash without raising a red flag and getting it closed." Filing 643-2 at 11 (¶ 23) (emphasis omitted). According to the affidavit, Bregman responded that "[w]e can get account with DAMA for sure." Filing 643-2 at 12 (emphasis omitted). Allrich avers that he "conducted an open-source search on DAMA and determined DAMA was a third party that allows marijuana manufacturers and those in the marijuana business to deposit marijuana proceeds into the banking system. [Allrich states that he knows] through training and experience, that national banks such as Wells Fargo, JP Morgan Chase, Bank of America, City National Bank, and others follow current federal laws and regulations and prohibit 'known' marijuana proceeds deposits into their institutions." Filing 643-2 at 12 (¶ 25).

The affidavit also states that, in October 2023, HSI Omaha proffered a cooperating defendant (CD-4) that had "35 years of art buying and trade experience, and 20 years of experience in the Los Angeles real estate and design market." Filing 643-2 at 12 (¶ 27). Allrich averred that CD-4 had business dealings with and business records relating to Bregman, Leidermann, and Reja, saying the individuals—including the defendant—purchased watches, fine furniture, art, properties, and vehicles with proceeds from their marijuana sales." Filing 643-2 at 8 (¶ 29). According to the affidavit, "CD-4 provided detailed financial records regarding CD-4's business transactions with Bregman, including, the year payments in cash were received from Bregman, the specific amounts of cash received, and which property CD-4 then used the cash to pay for. These records indicate [according to Allrich that] Bregman provided CD-4 with $5,100,000 in cash between 2011 and 2017 to purchase and make renovations [to a California property]." Filing 643-2 at 13 (¶ 30) ("Bregman" reduced from all capitals). Several cash payments for the California property were "delivered to CD-4 by Leidermann, on behalf of Bregman." Filing 643-2 at 13 (¶

30). The affidavit then alleges that the defendant engaged in other real estate transactions, culminating in the defendant's purchase of the 1904 SE Colony Way, Jupiter, Floria, residence. *See* Filing 643-2 at 13–14 (¶¶ 31–34). Important to the motions at issue, Allrich averred that "[b]ased on conversations with Bregman starting in 2012, CD-4 indicated Bregman's only known source of income came from his marijuana business transactions." Filing 643-2 at 14 (¶ 34). The affidavit asserts based on Bregman's driver's license and car registrations that the Jupiter, Florida, address is the defendant's home address. Filing 643-2 at 14–15 (¶¶ 35–37).

The probable cause summary concludes with Allrich asserting that his training and experience show that individuals keep historical records relating to the sale of their homes and other relevant financial records "within their homes" and on certain digital devices contained in their homes. Filing 643-2 at 15 (¶ 39). Allrich also states that "individuals who are in the marijuana trade frequently have bulk currency because of the restriction on depositing marijuana proceeds into the banking system" and that valuable assets such as watches, jewelry, art, fine, [sic] [and] vehicles" are stored within their homes." Filing 643-2 at 15 (¶ 40).

The probable cause summary submitted with the warrant application in the Central District of California contains many of the same assertions such that they need not be restated. *Compare* Filing 643-2 *with* Filing 643-1. The affidavit says that the California target premises at 1645 N. Vine Street, Apartment 1007, Los Angeles, CA 90028 were used to "facilitate his money laundering" and that records of those activities are likely stored at the California premises. Filing 643-1 at 15–16 (¶ 7).

*2. The Defendant's Interview*

The defendant offered an audio recording of Allrich's December 12, 2023, interview with the defendant and an unofficial transcript of that recording. Filing 643. The Court reviewed both.

Judge Carson accurately recounts what transpired during the interview. *Compare* Filing 643-3; *with* Filing 913 at 6–10. However, the Court will provide a brief summary of the interview to contextualize the following analysis.

The defendant was placed in handcuffs, wrapped in a towel, and escorted to a balcony when the California search warrant was executed in the morning of December 12, 2023. Filing 894 at 56. The recording begins mid-conversation. Exhibit 2 at 00:00.[2] Although contested, it appears that, before the recording began and before any *Miranda* warnings were given, Allrich may have asked the defendant whether he had paid money to a codefendant's attorney, whether a codefendant had been at the defendant's apartment the day prior, and displayed photographs of alleged coconspirators for identification.[3] Filing 943 at 19. Allrich provided the defendant with a written rights advisement, which stated:

STATEMENT OF RIGHTS

> Before we ask you any questions, it is my duty to advise you of your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court, or other proceedings.
>
> You have the right to consult an attorney before making any statement or answering any questions.
>
> You have the right to have an attorney present with you during questioning.
>
> If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.

[2] The interview recording was submitted via an audio file on a thumb drive. Filing 643. The Court will accordingly cite the Interview as "Exhibit 2" and provide time stamps where relevant.

[3] Allrich testified that he believed that he did not ask about, but made a statement, concerning a codefendant's presence at the defendant's apartment. Filing 894 at 61–62. Allrich also testified that he believed the defendant did not identify any individuals until after the *Miranda* advisement was given. Filing 894 at 61–62. Allrich testified that this initial conversation was not intended to elicit any incriminating response but to let the defendant know that law enforcement had "a lot of information" and to assess the defendant's demeanor. Filing 894 at 28–29.

> If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

Filing 757-1 at 1.

After giving the defendant the form, Allrich confirmed that the defendant could read by having the defendant read the first line aloud. Exhibit 2 at 00:25-00:35. After further confirming that the defendant could read and understand English, Allrich had the defendant read the rest of the page, and the defendant proceeded to say, "ok . . . ok . . . ok . . ." and paused after each utterance. Exhibit 2 at 00:30–00:56. Judge Carson correctly noted that the pauses were about the length of time required to read the advisement's lines. Filing 913 at 7; Exhibit 2 at 00:30–56. In total, the defendant read the advisement uninterrupted for approximately 30 seconds. Exhibit 2 at 00:30–56. The defendant then began asking Allrich questions, and Allrich redirected the defendant's attention to the form multiple times. Exhibit 2 at 2:40; 3:05–3:20. Allrich supplemented the form verbally, saying "you don't have to say a word. You don't have to answer one of my questions, or not." *See e.g.*, Exhibit 2 at 1:10.

After what seems from the recording to be the time that the defendant finished reading the form, the defendant stated that he would like to call his wife and asked, "[w]hat are my options now?" Exhibit 2 at 3:25. Allrich stated, "[y]our options are to agree to talk to me. You can, you can pull that agreement anytime." Exhibit 2 at 3:25. Allrich stated that the defendant could call an attorney if he asked for one, and the questioning would then end. Exhibit 2 at 3:35. Allrich thereafter read the form's written waiver aloud, saying "I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." Exhibit 2 at 4:05. The defendant did not offer any verbal protest, and Allrich then explained that

he would ask a few questions that the defendant would not need to answer if he did not want to. Allrich also explained that the defendant could tell Allrich that he wanted an attorney at any time and if the defendant did so they would be "done" and that Allrich was "ok with that." Exhibit 2 at 4:20. The defendant answered Allrich's questions without protest but did not sign the form.

Among other things, Allrich asked the defendant who was present at the Florida residence. Exhibit 2 at 9:40. The defendant responded that his wife was there and that there would be legal firearms on the premises. Exhibit 2 at 9:45. The defendant also stated that there would be money because he owns a licensed cannabis dispensary and a licensed cultivation operation. Exhibit 2 at 10:00. Allrich allowed the defendant to call his wife. Exhibit 2 at 18:00. Allrich asked for the code to the defendant's phone after retrieving it. Exhibit 2 at 18:00. The defendant stated that the agent could unlock the phone by putting it to his face, but Allrich declined, saying, "[n]o, what's your code." Exhibit 2 at 18:00. The defendant provided it rapidly without protest. Exhibit 2 at 18:00. The defendant's wife was then called, and Allrich advised her to leave the residence because law enforcement was about to execute a search warrant. Exhibit 2 at 19:00.

Allrich asked the defendant for the code to a safe found in the California residence. Exhibit 2 at 33:30. The defendant replied, "[y]eah, I'll give you the codes." Exhibit 2 at 33:40. The defendant stated that the code applied to all the safes and also stated that he had not been able to open the "little one" in a decade. Exhibit 2 at 34:33. Allrich and the defendant then moved inside. Exhibit 2 at 34:40. The defendant later reiterated that he had been unable to open the safe several times and even stated "break into it, I've been trying to get into it for 10 years." Exhibit 2 at 1:05:30. Allrich asked the defendant for the code to his MacBook. Exhibit 2 at 1:08:40. The defendant provided the code immediately. Exhibit 2 at 1:08:40. The defendant then provided the code for what appears to be another small safe and stated that he had been unable to open it for

years.[4] Exhibit 2 at 1:09:00–1:10:00. The defendant also advised that it would be "fine" if investigators had to force the safe open. Exhibit 2 at 1:09:00–1:10:00. The defendant also gave another passcode for an iPad after being asked. Exhibit 2 at 1:23:10. Investigators opened the safe and found cash and watches inside. Filing 894 at 40–41.

It does not appear that the defendant's phone was searched when the search warrant was executed, even though the defendant provided the passcode and called his wife. Filing 894 at 104. Allrich testified at the evidentiary hearing before Judge Carson that law enforcement obtained a separate warrant to search some of the seized electronics and the phone and that he did not ever personally search the phone. Filing 894 at 104.

**B. Procedural Background**

The defendant's two motions to suppress were filed on January 15, 2026. Filing 610; Filing 615. The defendant also filed briefs in support of the motions on January 15, 2026, Filing 611; Filing 616; and exhibits relating to the motions on January 22, 2026, Filing 643; Filing 643-1 through Filing 643-4. The Government filed responses to the defendant's two motions on February 27, 2026, Filing 737, and March 5, 2026, Filing 755. The Government also filed various exhibits. Filing 739; Filing 739-1; Filing 739-2; Filing 757; Filing 757-1. The defendant filed reply briefs on March 25, 2026. Filing 789; Filing 791.

On April 10, 2026, Judge Carson held an evidentiary hearing where the defendant argued *inter alia* that Allrich "represented to the magistrate that there's no legitimate income associated with the defendant" and that Allrich's "material omissions" prevented the magistrate judges from

[4] As noted by Judge Carson, it is not entirely clear how many safes were present at the California property. However, neither the audio file nor unofficial transcript ever show that the defendant resisted divulging any code. Filing 643-4; Exhibit 2.

properly determining whether the search warrants were supported by probable cause. *See* Filing 894 at 129–130 (Transcript). On July 17, Judge Carson filed a Findings and Recommendation that recommended denial of both motions in their entirety. Filing 913.

The defendant filed a motion to extend the deadline to file objections to the Findings and Recommendation on August 26, 2026. Filing 942. However, the defendant timely filed his Objection to the Findings and Recommendation on August 31, 2026, with an exhibit.[5] Filing 943. On September 14, 2026, the Government filed a motion to extend for the purpose of filing a response to the defendant's Objections. Filing 961. The Court granted the Government's motion, Filing 962, and the Government filed its response on October 6, 2026, Filing 965.

## II. ANALYSIS

### A. Applicable Standards

Under the Federal Rules of Criminal Procedure, the Court "must consider de novo any objections to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections[.]"). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions."

[5] Given the defendant timely filed his Objection to the Findings and Recommendation, the Court denies the outstanding motion to extend deadline to file objections as moot. Filing 942.

*Id.* Moreover, a party's failure to object in accordance with Rule 59 "waives a party's right to review." Fed. R. Crim. P. 59(b)(2); *United States v. Merrett*, 9 F.4th 713, 716 (8th Cir. 2021) (noting that the defendant "did not object to the magistrate judge's order denying his motion, and his failure to object waives his right to review under Federal Rule of Criminal Procedure 59(a)"), *cert. denied*, 142 S. Ct. 815 (2022).

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[ ] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the suppression hearing and has reviewed the exhibits admitted at the hearing.

### B. The Affidavits' Failure to Mention Defendant's Licensed Marijuana Business Activities Does Not Warrant a *Franks* Hearing or Suppression of Evidence

The defendant raises many objections as to Judge Carson's recommended dispositions of his two motions. The Court divides this order into three parts. The Court will first assess whether Allrich's failure to affirmatively mention the defendant's licensed marijuana business activities warrants a *Franks* hearing or suppression of evidence. Filing 615. The Court will then assess whether the warrants were impermissibly overbroad. Filing 615. The Court will finally assess

whether the statements made to Allrich during the December 12, 2023, interview should be suppressed. Filing 610.

*1. The Magistrate Judge's Findings and the Defendant's Arguments*

The defendant "move[d] this Court to suppress all evidence seized at [the California premises and the Florida premises] pursuant to search warrants issued by [the magistrate judges in the Central District of California and the Southern District of Florida]" and for a *Franks* hearing "to challenge the affidavits" on the ground that they omitted material facts. Filing 615 at 1–2 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). The defendant asserts that he is entitled to this relief because "[t]he applications in support of warrants to search Bregman's California and Florida properties intentionally or recklessly omitted material facts regarding Bregman's work with state-licensed, state-regulated marijuana companies, operating lawfully in California." Filing 615 at 2.

Judge Carson found the defendant's argument that Allrich "represented to the magistrate that there's no legitimate income associated with the defendant" and that Allrich misled the magistrate judge unavailing. Filing 913 at 12 (citing Filing 894 at 129). Judge Carson observed that "[t]o trigger the right to a *Franks* hearing, a defendant must make a 'substantial preliminary showing' that both (1) 'the affiant . . . knowingly and intentionally made false statements or made them in reckless disregard for the truth' and, (2) 'if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause' to issue the search warrants." Filing 913 at 11 (ellipsis in original) (quoting *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013)). Judge Carson noted that "Allrich did not affirmatively state that Defendant had no legitimate income, rather he asserted in each warrant that 'Bregman's only known source of income came from his marijuana business transactions.'" Filing 913 at 12 (citing Filing 643-1 at 22; Filing 643-2 at 14). Judge Carson concluded that "there was no showing that the agent made

false statements or omitted information with reckless disregard for truth," reasoning that "[Allrich's] statement that Defendant's income was generated from marijuana businesses was accurate, and he had sufficient reason to believe that at least part of the business was not legitimate." Filing 913 at 13. Nonetheless, Judge Carson also concluded that the defendant is not entitled to a *Franks* hearing and that the motion should be denied because "[t]he omission or inclusion of Defendant's *legal* marijuana proceeds would not have altered the probable cause determination, as sufficient facts were alleged to find probable cause that Defendant was involved in an illegal interstate operation." Filing 913 at 14.

The defendant argues that Judge Carson erred in rejecting his *Franks* challenge to the affidavit's omissions. Filing 943 at 1. The question, according to the defendant, is "whether Allrich *recklessly* presented an incomplete and materially misleading financial picture to the issuing magistrate." Filing 943 at 3. The defendant asserts that Allrich did so because omitting that the defendant participated in legitimate, state-licensed, state-regulated marijuana businesses caused the magistrate judges to be under the impression that "none of Bregman's income was legitimate." Filing 943 at 2–3. The defendant asserts *inter alia* that the omission is "'clearly critical' to the finding of probable cause." Filing 943 at 3.

*2. Applicable Standards*

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his

authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Franks v. Delaware*, 438 U.S. 154, 165 (1978) (internal citations omitted). While an affidavit supporting a search warrant is presumed to be truthful, *see Franks*, 438 U.S. at 164, a defendant is entitled, in limited circumstances, to "a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). "[I]n order to merit a *Franks* hearing, [the defendant] must show both (1) that the affiant . . . 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *Arnold*, 725 F.3d at 898 (citing *Franks*, 438 U.S. at 155–156). The defendant must show "by a preponderance of the evidence that an affidavit including [the omitted information] could not support a finding of probable cause." *United States v. Miller*, 11 F.4th 944, 952–53 (8th Cir. 2021). "The requirement of a substantial preliminary showing is not lightly met." *Arnold*, 725 F.3d at 898 (internal quotation marks omitted) (citation omitted).

*3. Application*

The defendant meets neither showing required to merit a *Franks* hearing. The defendant must first show that "the affiant . . . 'knowingly or intentionally' made false statements or made them in 'reckless disregard for the truth.'" *Arnold*, 725 F.3d at 898. Like Judge Carson, the Court concludes that the defendant cannot meet this requirement because Allrich did not make any statement in the warrant affidavits that was untrue. Filing 913 at 12–13. Among the other circumstances surveyed, the affidavits detail a cooperating defendant, CD-4, that apparently advised law enforcement that Bregman and certain codefendants that were owners and operators

of FastBox had purchased watches, fine furniture, art, properties, and vehicles with proceeds from their marijuana sales. Filing 643-1 at 21 (¶ 28); Filing 643-2 at 13 (¶ 29). The affidavits state *inter alia* that "[b]ased on conversations with Bregman starting in 2012, CD-4 indicated Bregman's only known source of income came from his marijuana business transactions." Filing 643-1 at 22 (¶ 32) ("Bregman" reduced from all capitals); Filing 643-2 at 14 (¶ 34). The defendant appears to assert that the affidavits made an untrue statement warranting a *Franks* hearing, whether deliberately or recklessly, because the affidavits misled the magistrate judges by implying that "none of Bregman's income was legitimate." *See* Filing 943 at 2. Significantly, however, the defendant provides no explanation as to why a magistrate judge would inevitably reach this conclusion, especially where one of the relevant magistrate judges in this case is from the Central District of California. *Lucas v. City of Pomona*, 92 Cal. App. 5th 508, 517 (Cal. Ct. App. 2023) (saying "[t]he [California] Department of Cannabis Control, the Department of Food and Agriculture, and the State Department of Public Health were charged with licensing and regulating commercial cannabis activities in California" and that issuance of "licenses for such activities commenc[ed] January 1, 2018"). The defendant fails to meet the first showing required for a *Franks* hearing. *Arnold*, 725 F.3d at 898 (saying "[the defendant] must show . . . (1) that the affiant . . . 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth'").

The Court also agrees with Judge Carson that the defendant fails to meet the second showing required to merit a *Franks* hearing. In addition to showing that the affidavit contained a false statement that was knowingly or recklessly made, the defendant must also show that "if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *Arnold*, 725 F.3d at 898 (citing *Franks*, 438 U.S. at 155–156). The

probable cause statements in the California and Florida applications survey many relevant circumstances uncovered through a multi-year investigation. Filing 643-1 at 15–24; Filing 643-2 at 8–16. Even if Allrich supplemented CD-4's apparent representation that Bregman's "only known source of income came from his marijuana business transactions" with an explicit statement that at least some of the defendant's business transactions were legal, the affidavits would still have established probable cause. Filing 643-1 at 22 (¶ 32); Filing 643-2 at 14 (¶ 34).

"Probable cause to issue a search warrant exists when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotation marks omitted) (citation omitted). "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citation omitted). "The determination of probable cause is made after considering the totality of the circumstances." *Proell*, 485 F.3d at 430.

The defendant errs in attributing more importance to the statement that the defendant's marijuana business was his "only known source of income" and the affidavit's failure to supply information relating to the defendant's state-licensed marijuana business activities than is warranted. Filing 943 at 3–4. Rather than undergirding the entire affidavit, information relating to the defendant's income is only one piece of information used to show probable cause. The affidavits cited the defendant's significant connections to FastBox and detail many reasons to believe that the defendant was engaged in criminal activity and that evidence would be seized at the target locations. *See generally* Filing 643-1; Filing 643-2. The affidavits cite a multiyear investigation into FastBox—a company investigators identified as used to distribute marijuana and

launder proceeds. *See, e.g.*, Filing 643-1 at 15 (¶ 7), 16 (¶ 10); 17 (¶ 12); Filing 643-2 at 7 (¶ 4), 9 (¶ 10). During the course of this investigation, the affidavit states that investigators learned from a cooperating defendant (CD-3) that was purportedly employed by FastBox that the defendant, Adam Ross Bregman, or "A"/"A-Real," had a strong relationship to owners and operators of FastBox, such as codefendant Max Leidermann. *See* Filing 643-1 at 17–18 (¶¶ 14–16); Filing 643-2 at 10 (¶¶ 15–17). Among other things, the affidavit states that investigators identified text conversations on Leidermann's phones that included an August 11, 2011, exchange where one of the members of the group chat stated that "[a]s of now it's hard to space deposits out enough to cover the things that can not [sic] be paid in cash without raising a red flag and getting it closed." Filing 643-1 at 19–20 (¶¶ 20, 22); Filing 643-2 at 11 (¶¶ 21–24). The affidavits state that Bregman responded that "[w]e can get account with DAMA for sure." Filing 643-1 at 20 (¶ 20); Filing 643-2 at 12 (¶ 24). Allrich explained in the affidavits that DAMA is a third party allowing marijuana proceeds to be injected into the banking system despite national banks prohibiting "known" marijuana proceeds from being deposited due to federal law. Filing 643-1 at 20 (¶ 24); Filing 643-2 at 12 (¶ 25).

Additionally, the HSI Oklahoma City Task Force stopped a semi-tractor in 2020, and "discovered approximately $3.9 million of suspected narcotics proceeds secreted in one of the FastBox crates. The suspected narcotics proceeds were packaged and marked with different symbols and/or acronyms, such as 'A,' 'NYO,' 'BL,' 'TR,' and others." Filing 643-1 at 17 (¶ 12); Filing 643-2 at 9 (¶ 13). Allrich indicated that "based on [his] training and experience and knowledge of the investigation," such markings "indicate[] the bulk currency belonged to different individuals." Filing 643-1 at 17 (¶ 12); Filing 643-2 at 9 (¶ 13). Again, CD-3—a purported

employee of FastBox—indicated that the defendant was "A." Filing 643-1 at 17 (¶ 15); Filing 643-2 at 10 (¶ 16).

The affidavit also explains that, "[o]n November 13, 2023, a federal grand jury in the District of Nebraska issued a superseding indictment" that charged the defendant and others with the aforementioned crimes. Filing 643-2 at 20 (¶ 25); Filing 643-2 at 12 (¶ 26). On the above, the Court agrees with Judge Carson that "there were sufficient allegations linking Defendant to the movement of narcotics and illegitimate funds to establish probable cause that at least a portion of Defendant's businesses were illegitimate." Filing 913 at 14. This picture is only made clearer by the purchases Allrich is alleged to have made. Allrich avers that Leidermann, Reja, and Bregman "purchased watches, fine furniture, art, properties, and vehicles with proceeds from their marijuana sales." Filing 643-1 at 21 (¶ 28); Filing 643-2 at 13 (¶ 29). Further, Allrich avers that Bregman "provided CD-4 with $5,100,000 in cash between 2011 and 2017 to purchase and make renovations to 7797 Torreyson Dr, LA CA 90046." Filing 643-1 at 21 (¶ 29); Filing 643-2 at 13 (¶ 30). According to the affidavits, "CD-4 stated several of the cash payments for [the Torreyson address] were delivered to CD-4 by Leidermann on behalf of Bregman" and that CD-4 believed that "some, if not all, the cash provided by Bregman or Leidermann to purchase [the Torreyson address] was derived from marijuana sales." Filing 643-1 at 21 (¶ 29) (Names reduced from all capitals); Filing 643-2 at 13 (¶ 30).

"The determination of probable cause is made after considering the totality of the circumstances." *Proell*, 485 F.3d at 430. Like Judge Carson, the Court finds that even if the magistrate judges were explicitly informed that the defendant engaged in licensed marijuana business activities, the probable cause analysis would not have changed based on the above circumstances. Additionally, "[t]here is no bright-line test for determining when information is

stale" because the finding is based on the totality of the circumstances. *See United States v. Hyer*, 498 Fed. App'x 658, 660 (8th Cir. 2013). The totality of the circumstances alleged in the affidavit–including the fact that the defendant was involved in financial transactions with codefendants from at least 2011 to at least May 2023, that the defendant had been tied to FastBox by multiple cooperating defendants and other circumstances for significant periods of time, the November 2023 superseding indictment naming Bregman as a defendant, the defendant's multiple real estate transactions, and Allrich's stated expertise and training—established "a 'fair probability that contraband or evidence of' criminal activity [would] be found in the particular place to be searched'" at the time the warrants were issued. *Proell*, 485 F.3d at 430 ("The determination of probable cause is made after considering the totality of the circumstances."); *see generally* Filing 643-1; Filing 643-2.

### C. The Warrants Were Not Overbroad

#### *1. The Magistrate Judge's Findings and the Defendant's Arguments*

The defendant also attacks the California and Florida warrants as being overbroad. Filing 615 at 2. Judge Carson found this argument unavailing. Judge Carson stated that the nexus between the evidence to be seized and the place to be searched "was clearly set forth in both warrants." Filing 913 at 15. Judge Carson further reasoned that the affidavits did not become stale based on the totality of the circumstances and that they were "sufficiently particularized to identify the items to be seized." Filing 913 at 16. Judge Carson therefore recommended that "the motion to suppress on this additional basis be denied." Filing 913 at 16. However, Judge Carson also observed that the evidence seized would also be admissible under the *Leon* good-faith exception to the exclusionary rule." Filing 913 at 17.

The defendant's Objection makes several arguments relating to overbreadth. First, the defendant argues that Judge Carson improperly relied on the Indictment and generalized conspiracy allegations without adequately examining the nexus to each residence. Filing 943 at 9. Second, the defendant argues that the warrants lacked particularity and that there was no nexus to the electronic evidence. Filing 943 at 10. Third, the defendant argues Judge Carson analyzed the California and Florida warrants as one warrant and that they each lacked necessary limitations. Finally, the defendant asserts that Judge Carson erred in applying *Leon* because the same defects that undermine the warrants also undermine objective good-faith reliance. Filing 943 at 13.

*2. Applicable Standards*

As noted above, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Eighth Circuit has explained that the Fourth Amendment's particularity requirement is "a standard of practical accuracy rather than a hypertechnical one." *United States v. Schave*, 55 F.4th 671, 675 (8th Cir. 2022) (citation omitted). In assessing whether the particularity requirement is met, the Court considers "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (citation omitted). The Eighth Circuit has further explained that there must be "a 'nexus' between the evidence to be seized and the place to be searched, considering 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *Schave*, 55 F.4th at 676 (quoting *United States v. Smith*, 21 F.4th 510, 515 (8th Cir. 2021)).

Additionally, there exists a "good-faith exception to the exclusionary rule, as established in *Leon*." *Proell*, 485 F.3d 427 (8th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897 (1984)). "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *Id.* A "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (brackets omitted). According to the Eighth Circuit,

> The [Supreme] Court in *Leon* cited four circumstances in which the good-faith exception does not apply: (1) when there is a *Franks* violation; (2) when an issuing judge has "wholly abandoned his judicial role"; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Puckett*, 466 F.3d at 626. "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, [courts] can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

*3. Application*

The Court agrees with Judge Carson that the required "nexus was clearly set forth in both warrants." Filing 913 at 15. Both affidavits explained Allrich's experience and expertise relating to the means and methods that drug traffickers employ. Filing 643-1 at 14 (¶ 4); Filing 643-2 at 7 (¶ 3). The warrants also explain Allrich's knowledge relating to drug traffickers' use of telephones to facilitate drug activity. Filing 643-1 at 15 (¶ 5); Filing 643-2 at Filing 643-2 at 7 (¶ 3). Judge Carson also correctly points out that Allrich explains with reference to his knowledge and expertise

in the field that electronic devices "often hold electronic evidence related to a crime, the device's user, or the existence of evidence in other locations" and that certain relevant financial records are kept and stored within homes or on "digital devices, including home computers, laptops, tablets, and smartphones." Filing 913 at 15 (citing Filing 643-1 at 24–25; Filing 643-2 at 15). The affidavits also averred that the investigation uncovered that the defendant had been engaged in the 2023 text message and group chat conversations with codefendants that owned and operated FastBox detailed elsewhere. Filing 643-1 at 19–20 (¶¶ 20–24); Filing 643-2 at 11–12 (¶¶ 21–25). These conversations included the discussion of DAMA and the movement of funds through different accounts. Filing 643-1 at 19–20 (¶¶ 20–24); Filing 643-2 at 11–12. It is also relevant that the conversations spoke of the movement of funds as needing to occur without raising "red flags" and that members of the group chat—including the defendant—had been indicted for, and were alleged to be part of, a conspiracy to distribute narcotics and conspiracy to launder money. Filing 643-1 at 19–20 (¶¶ 20–24); Filing 643-2 at 11–12 (¶¶ 21–25).

The defendant's arguments are unavailing. The defendant is correct that "[a]n indictment does not constitute probable cause to issue a search warrant," Filing 943 at 10, but Judge Carson can hardly be said to have relied on the fact that an indictment had been returned against the defendant. *See* Filing 913 at 15–17. Rather, Judge Carson found that circumstance alleged in the affidavits relevant to the totality of the circumstances analysis. Filing 913 at 17. A superseding indictment charging the defendant is, indeed, a relevant circumstance. The warrants also met the Eighth Circuit's standard of practical accuracy relating to particularity and were therefore properly limited because the affidavits specifically alleged Allrich's expertise and reasons to believe that the evidence relating to the sort of drug trafficking and money laundering crimes alleged in this case would be present in the homes and electronic devices like computers, laptops, tablets, and

smartphones. *See, e.g.*, Filing 643-1 at 24–25 (¶¶ 38–44); Filing 643-2 at 15–16 (¶¶ 39–41). To the extent that the defendant makes an objection relating to staleness, as explained by the Court above, "[t]here is no bright-line test for determining when information is stale," *see Hyer*, 498 Fed. App'x at 660, and the Court's determination rests on the totality of the circumstances, *Proell*, 485 F.3d at 430. For the reasons explained above, the totality of the circumstances established probable cause. *Proell*, 485 F.3d at 430. The Court conducted a *de novo* review as to each warrant and finds that the defendant's objections in Filing 615 are unavailing.

Nonetheless, the *Leon* good-faith exception is also applicable here. It appears that the defendant primarily—if not entirely—objects to the application of the *Leon* good-faith exception on the grounds that there was a *Franks* violation and that no reasonable official could believe that the warrants were predicated on probable cause. Filing 943 at 13–14. The Court has already found that the defendant has not made the significant showing required to allege a *Franks* violation and that the warrants were supported by probable cause. *Arnold*, 725 F.3d at 898 ("The requirement of a substantial preliminary showing is not lightly met."). To the extent that the defendant objects to the application of the *Leon* exception on the basis that the warrants were overbroad, the defendant has not shown that the issuing judge wholly abandoned his or her judicial role, that it was "entirely unreasonable" to believe that probable cause existed, or that the warrant was "'so facially deficient' that no police officer could reasonably presume the warrant to be valid." *Puckett*, 466 F.3d at 630. Even if the warrants were improperly issued on the grounds that they were overbroad, the Court concludes that the *Leon* exception applies. As explained more thoroughly elsewhere, the affidavits explained the Superseding Indictment and the facts relating to a multiyear investigation. The affidavits also explained the defendant's alleged activity in the conspiracy, his conversations with codefendants, and why home premises and electronic devices were proper search targets. It was

objectively reasonable for the officers to rely on the issued search warrants. *See Puckett*, 466 F.3d at 630. Therefore, after conducting a *de novo* review of the defendant's objections, the Court denies the defendant's motion to suppress evidence from the California and Florida searches. Filing 615.

### D. The Defendant Was Provided His *Miranda* Rights and Engaged in the Interview Voluntarily

#### *1. The Magistrate Judge's Findings and the Defendant's Arguments*

The Court now addresses the defendant's second motion to suppress. Filing 610. This second motion to suppress seeks the suppression of "all statements [the defendant] made on December 12, 2023," to Allrich "during the execution of a search warrant at an apartment owned by Bregman, as well as any evidence (including physical and electronic) seized as the fruits of compelled, involuntary statements." Filing 610 at 1. The defendant asserts that suppression is warranted because "Allrich failed to read Bregman all of his *Miranda* rights" and because "Allrich's conduct and communication with Bregman during the interrogation misled Bregman as to his rights and rendered Bregman's perceived cooperation and purported rights waiver unintelligent and involuntary." Filing 610 at 2 (¶¶ 4–5).

Judge Carson found the defendant's arguments unavailing and recommended denial of the defendant's second motion to suppress. Filing 913 at 19–27. Among other things, Judge Carson found that the "limited pre-*Miranda* exchange" between the defendant and Allrich "does not warrant exclusion of all statements made post-*Miranda*" and that the issue is also moot because the government has represented that it has no intention of using any of the pre-*Miranda* information at trial. Filing 913 at 20. Judge Carson also found that the questioning was not an impermissible "two-step interrogation technique" and was not part of a deliberate attempt to circumvent *Miranda* because, among other reasons, the initial conversation was "more

informational, so that Defendant could understand why law enforcement was there and what information they may have." Filing 913 at 20–21. Judge Carson also found that the *Miranda* advisement was sufficient because, among other reasons, Allrich gave the defendant ample time to read the entirety of the form. Filing 913 at 21. Judge Carson also observed that the defendant asked appropriate questions, that the defendant audibly acknowledged reading the lines, and that Allrich supplemented the form with verbal advisements. Filing 913 at 21–22. Judge Carson also found that the evidence showed that the defendant chose to participate in the interview and provide statements and other information calmly and voluntarily after repeatedly being advised that he did not have to answer questions and could ask for an attorney. Filing 913 at 22–23. Judge Carson also found that the passcodes to the phone and safes were voluntarily given. Filing 913 at 25–27.

The defendant objects to Judge Carson's recommended disposition. First, the defendant asserts that insufficient evidence exists to show that the defendant actually read and comprehended the Statement of Rights form given to him by Allrich. Filing 943 at 14–15. The defendant also argues that Allrich's verbal supplementations of the Statement of Rights "narrowed, contradicted, or distracted from the written *Miranda* warnings." Filing 943 at 16. The defendant also asserts that the government did not sufficiently prove that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. Filing 943 at 18. The defendant further argues that Allrich impermissibly attempted to circumvent *Miranda* and that "[t]he Government's promise not to use the prewarning statements does not moot the issue." Filing 943 at 20. The defendant argues next that Judge Carson failed to evaluate the entire course of coercive conduct under the totality of the circumstances. Filing 943 at 21. Finally, the defendant maintains that Allrich compelled the defendant to involuntarily disclose his phone passcode and the codes to the defendant's safes. Filing 943 at 22.

*2. Applicable Standards*

The Fifth Amendment to the United States Constitution states *inter alia* that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The Supreme Court has explained that *Miranda* prescribed four warnings that must be given prior to any custodial interrogation:

> "[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, *60 and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." [*Miranda*, 559 U.S. at 479].

*Florida v. Powell*, 559 U.S. 50, 59–60 (2010).

"There are 'two distinct dimensions' to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (citation omitted). "First, the waiver 'must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (citation omitted). Second, "the suspect must have waived his rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (citation omitted).

The "totality of the circumstances" is considered "in determining whether a suspect's waiver is valid." *Id.* (citation omitted). The defendant's maturity level, education, physical condition, and mental condition are also factors considered. *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010). "The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was extracted by threats, violence, or

direct or indirect promises, such that [a person's] will is overborne and his [or her] capacity for self-determination critically impaired." *United States v. Gipp*, 147 F.3d 680, 683 (8th Cir. 1998) (internal quotation marks omitted) (citation omitted) (alterations in original). The government bears the burden of proving by a preponderance of the evidence that the defendant waived his *Miranda* rights. *Miranda*, 384 U.S. at 473.

*3. Application*

The Court will consider each of the defendant's objections to Judge Carson's recommended disposition in turn. The defendant first objects to Judge Carson's finding that the defendant read and understood the entire *Miranda* advisement form. Filing 943 at 14. Allrich confirmed that the defendant could read by having him audibly read out the first line of the Statement of Rights form. Exhibit 2 at 00:25–00:35. The defendant was then provided approximately thirty seconds of uninterrupted time to read six relatively short statements. Filing 757-1 at 1; Exhibit 2 at 00:30–00:56. During this time, the defendant appears to audibly acknowledge the advisements, saying "ok . . . ok . . . ok . . ." in roughly the periods of time it would take to read the statements. Exhibit 2 at 00:30-00:56. The defendant was then read the Statement of Rights' waiver language. Exhibit 2 at 4:05. The defendant at no point objected, raised any protest, or otherwise indicated he wished to not be questioned, despite Allrich repeatedly advising him that he did not need to answer any questions and that he could contact an attorney if he wanted to. Exhibit 2. In fact, the defendant reiterated that he was trying to be cooperative. *See, e.g.*, Exhibit 2 at 2:55, 3:50; *see United States v. Woods*, 829 F.3d 675, 680 (8th Cir. 2019) (saying the defendant's refusal to sign a written waiver form does not make subsequent statements inadmissible). The evidence shows that the defendant "behave[ed] in a way that would cause a

reasonable person to believe that he or she has knowingly and voluntarily consented." *United States v. Farnell*, 701 F.3d 256, 263 (8th Cir. 2012).

The defendant asserts that even if he was the party that initiated any interruptions after the initial period given to read the Statement of Rights, the government has failed to show that he read and understood all of the rights. However, based on the circumstances above, the Court finds that the government has met its burden of showing that the defendant received and understood his rights. *Farnell*, 701 F.3d at 263. It is also notable that after many of the interruptions initiated by the defendant, Allrich repeatedly redirected the defendant's attention to the rights advisement. Allrich also supplemented the written advisement with verbal advisements. *See, e.g.*, Exhibit 2 at 1:00. The evidence shows that the defendant read and acknowledged the availability of the rights advised in the Statement of Rights. Therefore, the defendant's argument is unavailing.

The defendant next objects to the recommended disposition on the ground that Judge Carson improperly separates the written form from Allrich's contemporaneous misstatements and diversionary tactics. Filing 943 at 16. As noted above, the totality of the circumstances shows that the defendant read and understood all of his *Miranda* rights upon reading the Statement of Rights. The Statement of Rights form provided the defendant with each of his *Miranda* rights. *Florida*, 559 U.S. 59–60 (providing the four *Miranda* warnings); Filing 757-1 at 1. The defendant argues that Allrich's verbal statements "narrowed, contradicted, or distracted from the written *Miranda* warnings." Filing 943 at 16. However, the Court agrees with Judge Carson that is clear from the recording that these verbal advisements were meant to supplement the written form. Filing 913 at 22; *See, e.g.,* Exhibit 2 at 1:00. Thus, the defendant's argument that the supplementations failed to reiterate each and every right verbally is unavailing, as the totality of the circumstances shows that the defendant received and understood each of the rights law enforcement is required to give. The

defendant's argument that law enforcement only gave the defendant the option to talk now and withdraw later is also unavailing because the rights form properly advised him, Allrich repeatedly told the defendant that he did not need to talk, and Allrich told the defendant that he could pull the agreement to talk at any time. *See, e.g.*, Exhibit 2 at 1:10, 4:20. Allrich did not pressure the defendant to talk, saying that he would be "ok with" the interview terminating. *See* Exhibit 2 at 4:20. Allrich properly informed the defendant to his right to an attorney through the Statement of Rights and by supplementing the form verbally, saying that he could "call an attorney" at any point and that the questioning would stop. Exhibit 2 at 4:20. Finally, the defendant asserts Allrich paired the *Miranda* form with a false choice between immediate cooperation and losing the future value of cooperation." Filing 943 at 17. However, the defendant does not explain how Allrich's conduct in encouraging the defendant to cooperate violated his rights aside from referring back to the arguments the Court has already found unavailing. Filing 943 at 17. The defendant was properly advised of his rights based on the totality of the circumstances. *Vinton*, 631 F.3d at 476.

The defendant's third objection is that the government did not prove a knowing, intelligent, and voluntary waiver. Filing 943 at 18. *Vinton*, 631 F.3d at 476; *Thompkins*, 560 U.S. at 375 (upholding the implied waiver of *Miranda* rights, where the defendant made voluntary statements after being advised of his rights, even when he declined to sign the form). The totality of the circumstances shows that the defendant's waiver of rights was knowing, intelligent, and voluntary. Judge Carson correctly concluded that "[t]he evidence is sufficient to show that Defendant read and understood the Statement of Rights Form and then chose to participate in the interview and provide statements and other information to agents." Filing 913 at 23. The Court has elsewhere determined that the defendant knew his rights after being advised of them. Additionally, the defendant was calm and composed throughout the interview and responded directly and

intelligently to the questions asked. *See* Exhibit 2; *Sanchez*, 614 F.3d at 883 (saying the defendant's maturity level, education, physical condition, and mental condition are factors considered). The interview showed that the defendant was, at a minimum, of average maturity, education, and mental condition. *See* Exhibit 2. Despite being repeatedly advised that he did not have to answer questions or could ask for an attorney, the defendant never protested and never asked for an attorney. *See* Exhibit 2. He answered the questions straightforwardly with composure after being read the written waiver provision. *Gipp*, 147 F.3d at 683 ("The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was extracted by threats, violence, or direct or indirect promises, such that [a person's] will is overborne and his [or her] capacity for self-determination critically impaired."). The defendant stated that he was "trying to be as helpful as I can." Exhibit 2:55. After being informed that he could pull out of the agreement to talk at any time, the defendant responded, "[w]e're, we're talking, You asked me a question, I gave you an honest answer." Exhibit 3:35. The totality of the circumstances shows that the defendant made a knowing, intelligent, and voluntary waiver. *Vinton*, 631 F.3d at 476. The defendant "behave[ed] in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented." *Farnell*, 701 F.3d at 263.

The defendant's fourth objection is that Judge Carson erroneously found that Allrich did not impermissibly circumvent *Miranda*. Filing 943 at 19. Judge Carson found that law enforcement did not engage in an impermissible "two-step interrogation technique, where law enforcement provide[d] *Miranda* warnings 'midstream,' in an effort to secure protection for an earlier confession that may have been given without the benefit of the *Miranda* warnings." Filing 913 at 20 (citing *Ollie*, 442 F.3d at 1141). The defendant objects, saying *inter alia* that the "objective circumstances support deliberateness of the prewarning interrogation." Filing 943 at 19. The

Eighth Circuit has held that, in these circumstances, the prosecution must show by a preponderance of the evidence, "that the officer's failure to provide warnings at the outset of questioning was not part of a deliberate attempt to circumvent *Miranda*." *Ollie*, 442 F.3d at 1142–43. The Government has done so here. At the evidentiary hearing before Judge Carson, Allrich testified that the interaction was intended to be informal and was not intended to elicit any incriminating responses, as Allrich's aim was to take the situation's temperature. Filing 894 at 28–29. The defendant has not pointed to any statements that were incriminating, and whether certain questions the defendant objects to were actually asked is contested. *See generally* Filing 943. The initial interaction also appears brief. Filing 894 at 28–29. As noted elsewhere, Allrich provided with the defendant with the rights advisement and consistently directed the defendant's attention to the advisement. The Court agrees with Judge Carson that, when paired with the Government's commitment to not using any pre-*Miranda* statements, the Government has met its burden to show that the officer's failure to provide the *Miranda* warnings at the outset was not a deliberate strategy to circumvent *Miranda* and secure protection for an earlier confession made without the benefit of *Miranda* warnings. *Ollie*, 442 F.3d at 1141–43.

The defendant's fifth objection is that Judge Carson failed to evaluate the entire course of coercive conduct under the totality of the circumstances. Filing 943 at 20; *Vinton*, 631 F.3d at 476. The totality of the circumstances shows that the interview was voluntary. The search warrant was executed in the early morning, the defendant was handcuffed, left in a towel, and moved to a balcony while agents searched the home, but as mentioned elsewhere, the defendant remained calm and composed and reiterated his willingness to answer questions and be helpful to law enforcement after being advised of his rights. *See* Filing 894 at 56; *Sanchez*, 614 F.3d at 883; *Gipp*, 147 F.3d at 683. The defendant also complains that Allrich improperly leveraged his concern for

the safety of his wife and children at the Florida address and that such conduct should be assessed with the other circumstances in mind. However, the defendant asked to call his wife, and the evidence suggests that law enforcement permitted the request for logistical reasons, as it is safer for everyone, particularly when there are known firearms present in a home, to allow the occupants to leave prior to the execution of the warrant. Filing 943 at 21; *see* Exhibit 2. Nothing in the record indicates that the safety of the defendant's family was predicated on cooperation, and the defendant's demeanor during the interview does not indicate that he believed that it was. Under the totality of the circumstances, the Court finds the interview voluntary. *Vinton*, 631 F.3d at 476.

Finally, the defendant objects to the recommended disposition on the ground that Judge Carson erroneously found that the phone and safe codes were voluntarily disclosed and conflated authority to search with authority to compel testimony. Filing 943 at 22. The defendant objects to Judge Carson's conclusion because Judge Carson "relied in part on the premise that the California warrant 'allowed the government to access devices' and 'permitted agents to capture the passcodes.'" Filing 943 at 22. The defendant is right that the real question is "whether disclosure of the passcode was voluntary, not whether the warrant authorized agents to search after gaining lawful access." Filing 943 at 22. However, Judge Carson's reference to the search warrant can, at most, be said to lie at the periphery of his reasoning. Judge Carson's reasoning was centered on the voluntariness of the defendant's statements. Filing 913 at 25–26. The Court agrees that the defendant voluntarily disclosed the phone and safe codes. The Court has elsewhere discussed the issue of the defendant being provided his rights. After being provided with those rights, the defendant rapidly gave Allrich the code to his phone when asked. Exhibit 2 at 18:00. With respect to the safes and other devices, the defendant provided certain codes after he had spoken to his wife and was assured of the family's safety. Exhibit 2 at 33:40 (saying, "[y]eah, I'll give you the

codes”). As noted by Judge Carson, the defendant provided his phone passcode not long after being given his *Miranda* rights and told Allrich that he was trying to be helpful and cooperate. *See, e.g.*, Exhibit 2 at 2:55, 18:00. The recording also shows that the defendant readily volunteered the passcodes to his safes, including asking law enforcement to break open a safe if the code did not work. *See, e.g.*, Exhibit 2 at 1:05:30. The defendant displayed normal intelligence, did not appear to be under the influence of any substance, and demonstrated a clear understanding of what was being asked of him. *See* Exhibit 2. He was collected and composed throughout the entire search. *See* Exhibit 2. The totality of the circumstances supports the view that the defendant’s codes and statements were provided voluntarily and that his will was not overborne. *Gipp*, 147 F.3d at 683 (“The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was extracted by threats, violence, or direct or indirect promises, such that [a person’s] will is overborne and his [or her] capacity for self-determination critically impaired.”).

### E. Request for Supplemental Evidentiary Hearing

In the closing pages of his Objection, the defendant requests a supplemental evidentiary hearing. Filing 943 at 22–23. The defendant specifically details in his Objection that Allrich “prepared and swore to an amended criminal complaint alleging that [a defendant in a case before United States District Judge Robert F. Rossiter, Jr.] threw a federal agent to the ground and placed her in a chokehold.” Filing 943 at 23. The defendant asserts that “Judge Rossiter found that the allegation of a chokehold by [the defendant in that case] was ‘not established by any of the evidence.’” Filing 943 at 23 (citing *United States v. Hurtado-Cariaco*, No. 25cr-160 (D. Neb. 2026)). The defendant requests an additional evidentiary hearing for the purpose of impeaching Allrich specifically on these grounds. Filing 943 at 24.

In the Court's September 25, 2026, order granting the Government's Motion to Extend, the Court "specifically direct[ed] the Government to respond to the defendant's request for supplemental evidentiary hearing in addition to any objections raised by the defendant." Filing 962 at 1. Put briefly, the Government argues in its response that a supplemental hearing is not necessary on the basis identified by the defendant because "Judge Rossiter limited his comments to officers directly involved in the arrest of Hurtado and who inaccurately reported it. It is the [Government's] understanding [that] Agent Allrich completed an affidavit for an arrest warrant based on reports from the officers in Hurtado's arrest and was not a witness to it." Filing 965 at 12.

The Court denies the defendant's request for two primary reasons. First, the request was not a part of either of the defendant's motions and is not otherwise properly before the Court on a motion. NECrimR 12.3(b)(4). The District of Nebraska's local rules require a separate motion. NECrimR 12.3(b)(4). The defendant's motion for a *Franks* hearing was explicitly grounded in challenges to the affidavits relating to "omitted material facts regarding Bregman's work with state-licensed, state-regulated marijuana companies, operating lawfully in California." Filing 615 at 1. The defendant has not made a separate motion for an evidentiary hearing relating to Allrich's credibility generally. The defendant's Objection is not the proper place for the defendant to request an additional evidentiary hearing. 28 U.S.C. § 636(b)(1) (saying that when a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made"); *Gonzales-Perez*, 241 F.3d at 636 ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections[.]"). The request is not making a specific objection as to Judge Carson's Findings and Recommendation. Fed. R. Crim. P. 59(b)(3).

Second, even if the matter was properly before the Court, the Court would nonetheless deny the defendant's request. The defendant's request is premised on Allrich's credibility being thrown into question at the *Hurtado-Cariaco* sentencing hearing. Filing 943 at 23. However, the evidence does not show that Allrich's credibility was ever specifically questioned at the hearing. *See generally* Filing 943-1 (Transcript of hearing). It appears that Allrich authored and swore to an affidavit in that case based on *inter alia* "information obtained from other law enforcement officers involved in the investigation." Filing 4 at 3 in *Hurtado-Cariaco*, No. 25cr-160. The defendant is correct that Judge Rossiter "characterized the government's account as 'at worst, a misrepresentation' and 'at best, complete negligence,' and described the law-enforcement reports as 'embellished' and 'troubling.'" Filing 943 (citing Filing 943-1 at 28). However, it does not appear—and the defendant does not assert—that Allrich had a firsthand account of the conduct at issue in that case. Filing 943 at 22–24; *see generally* Filing 943-1. In fact, Judge Rossiter stated that "[i]f the reporting agent didn't see it, he shouldn't report it. And if he's going to rely on others to give him the information, they should be giving him different information." Filing 943-1 at 28. There is no suggestion from the sentencing transcript or other documentation that Allrich lied, intentionally misrepresented, or otherwise tried to mislead the court in *Hurtado-Cariaco*. Filing 943 at 22–24; *see generally* Filing 943-1. Therefore, the defendant has not identified any ground for which a supplemental evidentiary hearing is warranted, as the defendant has not shown that Allrich intentionally misrepresented or deliberately reported any erroneous information in *Hurtado-Cariaco*, even if his affidavit contained inaccurate information. *United States v. Harris*, 64 F.4th 999 (8th Cir. 2023) (saying the district court did not abuse its discretion in not reopening the suppression hearing when the defendant failed to show the probative value of the evidence); *see also United States v. Walker*, 840 F.3d 477, 484 (8th Cir. 2016) (saying the district court did

not abuse its discretion in denying a motion to reopen the suppression issue because additional evidence would not have impacted the court's ruling).

## III. CONCLUSION

For these reasons, and upon *de novo* review, the Court agrees with the findings and recommendation reached by the magistrate judge that a *Franks* hearing is not warranted and that suppression is not appropriate in this case with respect to either motion. Accordingly,

IT IS ORDERED:

1. The defendant's outstanding motion to extend deadline to file objections, Filing 942, is denied as moot;

2. Defendant Adam Ross Bregman's Objections to the Findings and Recommendation and Request for Supplemental Evidentiary Hearing, Filing 943, is denied;

3. The United States Magistrate Judge's Findings and Recommendation, Filing 913, are accepted; and

4. Defendant Adam Ross Bregman's Motions to Suppress, Filing 610; Filing 615, are denied.

Dated this 23rd day of October, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge